IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
--------------------------------------------------------------------

ROBERTA CLARK,

                              Plaintiff,                        OPINION AND ORDER

   v.

                                                      17-cv-867-wmc

NANCY A. BERRYHILL,
Acting Commissioner of Social Security Administration,

                              Defendant.

--------------------------------------------------------------------

      Pursuant to 42 U.S.C. § 405(g), claimant Roberta Clark seeks judicial review of the Commissioner of Social Security's determination that she is ineligible for Supplemental Security Income under Title XVI of the Social Security Act. Clark, who filed her claim *pro se* but is now represented by counsel on appeal, argues that remand is necessary because the ALJ failed to develop the administrative record adequately in support of his findings. Because the ALJ had a "heightened duty" to develop a record fully on behalf of a *pro se* claimant, the court agrees and will remand for further proceedings. *See, e.g., Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1991).

## BACKGROUND

### A. Procedural History

      Clark filed an application for supplemental security income (SSI) on January 28, 2013, alleging a disability onset date of November 30, 2008. (AR 17.) Her application was denied on May 14, 2013, and was denied again on reconsideration on October 2, 2013. (*Id.*) On March 4, 2015, she appeared *pro se* at a hearing before Administrative Law Judge Brent C. Bedwell ("ALJ Bedwell" or "ALJ"). (*See* AR 163-80.) The hearing itself

lasted only twenty-four minutes. (*See* AR 165, 180.) On March 20, 2015, ALJ Bedwell issued an unfavorable decision. (AR 14.)

After claimant appealed (AR 45), the Appeals Council initially remanded in April, 2016, for a new hearing because it could not find the administrative record. (AR 9-10.) Once the record was located in August 2017, however, the Appeals Council vacated its prior order, then upheld ALJ Bedwell's decision on September 20, 2017. (AR 3.) Claimant sought judicial review from this court. (*See* Compl. (dkt. #3).)

**B. Claimant's Medical Records**

The medical records considered by ALJ Bedwell are fairly sparse. For example, while claimant's alleged onset date is November 30, 2008, her medical records do not begin until 2012. Likewise, numerous medical records that claimant informed the ALJ existed are missing from the administrative record. Indeed, claimant specifically informed the ALJ that she received a CT scan of her head at Aspirus Grandview Hospital on September 9, 2013 (*see* AR 112-13), but the accompanying medical records are nowhere to be found in the record. Claimant also informed the ALJ that she visited Dr. Wes Frisbie[1] at Iron Wood Hospital on August 4, 2014, and that he diagnosed her with depression, high blood pressure, stress, migraines, and a concussion, as well acute visual impairments (AR 123). Any record of this visit is also missing.

The few medical records reviewed by the ALJ reveal that claimant was treated for

---

[1] The doctor's name appears simply as "Frisbey" in plaintiff's supporting brief. (*See* Pl.'s Br. (dkt. #9) 3.)

anxiety, stress, sleep deprivation, colds, bronchitis, hypertension, dyslipidemia, Carpal Tunnel Syndrome ("CTS") and rail styloid tenosynovitis in her left hand. (AR 127-131, 140, 147.) Clark apparently received a brace for her CTS, although her medical records do not indicate who prescribed it for her. (AR 21.) In her written request for appeal, Clark wrote that she wore a brace on her right and left hands, and she could not lift more than five pounds. (AR 12.) Clark also claimed that she had difficulty performing basic tasks, like writing. (*Id.*) At her hearing, Clark stated that an orthopedist named "Zergaball"[2] had ordered the braces, but there is again no documentation of this order in the administrative record. (AR 172-73.) Clark said that the brace was "helping" and that she did not frequently have to take medication for the pain. (AR 173-74.)[3]

Clark was prescribed amoxicillin, Atenol, Bonzepril and Ventolin for her sinus issues, hypertension, anxiety and lung problems respectively. (AR 88, 129.) At her hearing, Clark testified that the medication for her hypertension had been "very helpful." (AR 176.) Clark's doctor also prescribed her Citalopram for her depression in October 2012, and followed up with her in January and February 2013. (AR 156-62.) However, Clark's notice of appeal indicates that she still suffers from depressive symptoms. (AR 13.) Clark further believed that she had received the wrong medication for her depression. (*See id.*). At the hearing, she referenced "bad side effects" of the medication (although she did

---

[2] The orthopedist's name appears as "Zirgibel" in claimant's request for appeal. (AR 12.)

[3] Clark's request for appeal also indicated that she was unable to use a broom or clean with a sponge, and that she had to take frequent naps in order to have the energy necessary to clean. (*Id.*) In her SSA Function Report, Clark wrote that she had difficulty breathing and that "[she hadn't] slept all night for at least a year." (AR 93, 101.)

3

not elaborate), and she said that the medication gave her "bad dreams." (AR 171.) Clark reported seeing a doctor for her depression about "every three months." (AR 174.) Finally, Clark wrote on her disability report form that she was taking baby aspirin for "strokes," but there is no other mention of this condition in the record. (AR 113.)[4]

**C. ALJ's Decision**

On March 20, 2015, ALJ Bedwell issued a decision concluding that claimant was not disabled because she "did not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (ALJ Decision (dkt. #10-1) 5.) First, the ALJ considered her physical impairments, noting that claimant continued to perform daily activities despite her bronchitis. (AR 21.) The ALJ also found no indication of a diagnosis or report of CTS before February 25, 2015, and insufficient evidence to support a finding of severe impairment. (*Id*.) He also found no evidence that claimant's hypertension caused any significant limitations or end organ damage. (*Id*.)

Second, ALJ Bedwell determined that claimant's depression constituted a "medically determinable mental impairment," but found that this impairment was only "mild." (AR 22-23.) The ALJ further found that the claimant's statements concerning the limiting effects of her depression on her intensity, persistence and pace were neither entirely credible, nor supported by medical evidence in the record, plus that this

---

[4] In a note to the Appeals Council, dated April 10, 2015, Clark stated that she had an EKG taken, and the results indicated that she had had a mild heart attack, but Clark's note does not specify the date on which the EKG took place. (AR 126.)

4

impairment created only a "mild" limitation in activities of daily living, social functioning, and concentration, persistence or pace, and there were no episodes of decompensation. (AR 22.)

Ultimately, the ALJ concluded that the claimant's physical and mental impairments, whether considered independently and in combination, did not significantly limit her ability to perform basic work activities. (*Id*.) On this basis, the ALJ found that claimant was not disabled under the Social Security Act.

OPINION

Courts review an ALJ's decision in a social security disability proceeding to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). In reviewing an ALJ's decision, the court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Id.* When a full and fair record is lacking, however, the ALJ will not have sufficient facts on which to make an informed decision, and thus his decision will not be supported by substantial evidence. *Hardman v. Colvin,* 820 F.3d 142, 147 (5th Cir. 2016); *see also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (analyzing ALJ's development of the record as part of substantial evidence review).

As noted above, Clark is seeking remand because the ALJ did not develop a substantive record to support his findings. In opposition, the government makes three arguments: (1) there was no heightened duty because claimant validly waived her right to representation; (2) claimant bore the burden to submit evidence sufficient to prove her

disability; and (3) the speculation that additional evidence might be obtained is not enough to warrant remand. The court addresses each below.

I. **Waiver of ALJ's Heightened Duty**

The government first argues that the ALJ did not have a heightened duty to develop the record because the claimant knowingly and validly waived her right to representation. (Def's Opp'n. (dkt. #10) 2-7.) In general, the government contends that "the agency's publications and the ALJ's statements gave Plaintiff a clear and accurate picture of the benefits and costs of representation." (*Id.* at 6.) More specifically, the government notes that: (1) Clark received SAA Publication No. 05-10075 (attached to the Notice of Hearing), which informed her about the benefits of representation; (2) Clark certified that she understood her right to representation at the reconsideration level; (3) the Administration emailed her an acknowledgement letter with an attached Social Security Publication entitled "Your Right to Representation" that informed her about the potential benefits of having a representative, as well as the rules and options governing fees; and (4) at her hearing, the claimant signed a waiver of representation and the ALJ provided her with similar information on the record. (Def's Opp'n (dkt #10) 4-5 (citing AR 63-64 (Notice of Hearing); AR 45 (Certification of Right to Representation); AR 64-65 ("Your Right to Representation"); AR 63-64 (Waiver of Representation Form)).)

Although the agency appropriately took steps to notify Clark of her right to counsel, notice also is not dispositive of waiver. *See Thompson v. Sullivan*, 933 F.2d 581, 581-82 (7th Cir. 1991). To ensure a valid waiver of a claimant's statutory right to counsel, an ALJ must also explain to *pro se* claimants the following: (1) how an attorney can aid in the

6

proceedings; (2) the possibility of free counsel or a contingency fee arrangement; and (3) the limitation on attorney fees to 25 percent of past-due benefits and required court approval of the fees. *Id.* at 584; *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The government contends that a 1989 amendment to the Social Security Act requiring the Commissioner to notify disability claimants in writing of their options for representation abrogates *Thompson*'s three-part explanatory requirement for waiver. (Def's Opp'n. (dkt. #10) 3-6 (citing 42 U.S.C. §§ 406(c), 1383(d)(2)(D)).) However, as the government recognizes (*id.* at 5), the Seventh Circuit has not adopted this interpretation and has continued to rely on *Thompson*'s three-part standard. *See Skinner*, 478 F.3d at 836.

Here, the ALJ explained to claimant during the hearing how an attorney could help in the proceedings, but he failed to inform her about the possibility of free counsel or a contingency arrangement, as well as neglected to mention the 25 percent of past-due benefits limitation on attorney's fees. (*See* AR 165-66.) The fact that claimant was provided with this information in writing does not excuse the ALJ's failure to explicitly state it during the claimant's hearing. *See Skinner*, 478 F.3d at 841 (written notices provided to claimant insufficient to establish valid waiver of right to counsel if ALJ failed to provide that information at claimant's hearing).

Even if claimant's waiver of counsel were valid, the ALJ still had an "enhanced duty" to develop the record of a *pro se* claimant. *Nelms*, 553 F.3d at 1093-98. While a social security claimant bears the burden of proving disability, an ALJ always has a duty to develop a full and fair record. 42 U.S.C. § 405(g); *Nelms*, 553 F.3d at 1098. This duty is enhanced when a claimant appears without counsel, willingly or not; in which case, the

7

ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Nelms*, 553 F.3d at 1098. This heightened burden reflects courts' recognition that absence of counsel can be prejudicial to claimants in disability proceedings. *Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (cited in *Nelms*); *see also* William D. Popkin, *The Effect of Representation in Nonadversary Proceedings—A Study of Three Disability Programs*, 62 Cornell L. Rev. 991, 992-93 (1977) ("The data in this study show that represented clients usually have an advantage over unrepresented clients even in informal, nonadversary proceedings.").

Indeed, ALJ Bedwell made representations to the claimant at her March 4, 2017, hearing acknowledging his heightened duty to develop the record. Specifically, the ALJ advised claimant that if she chose to proceed without representation, he would fill any missing gaps in the record:

> Okay, the alternative is that you have the right to proceed today on your own without a representative and if you choose to do that, then *it's up to me and my staff to talk to you and make sure that we have everything in your file that you want in your file* and if we don't, then *I go get it for you*, make it part of the file and then send you copies of everything that I have received . . . .

(AR 169 (emphasis added).) Moreover, at the hearing, claimant signed a written waiver of representation that states:

> I also understand that *the judge has a duty to ensure that his or her decision is based upon a complete* record, and if I decide not to obtain representation, the judge will make a reasonable effort to insure that all pertinent and relevant evidence is obtained and made part of the record.

(AR 78 (emphasis added).) These oral and written representations assured claimant that ALJ Bedwell would take additional steps to locate evidence and develop a full record.

8

Considering these representations, as well as the case law discussed above, defendant is wrong both legally and factually in arguing that ALJ Bedwell owed no heightened duty to Clark to develop the record in this case.

II.  **Burden on Claimant to Produce Evidence of Disability**

The government next argues that a 2015 revision to social security regulations still places the burden on a claimant to submit "all evidence known to [her] that relates to [her] disability claim." (Def's Opp'n (dkt. #10) 7-8) (quoting Submission of Evidence in Disability Claims, 80 Fed. Reg. 14828, 14829 (Mar. 20, 2015).) However, this amended regulation does not support the government's claim that the ALJ is relieved of his duty to develop the record, especially where a *pro se* claimant is concerned. First, there is no case law supporting the government's proposed interpretation. Only one district court has cited the regulation, and it only did so in a footnote to observe that the Act had been amended. *See Shives v. Colvin*, No. 2:14-CV-29 NAB, 2015 WL 1313316, at *4 n.3 (E.D. Mo. Mar. 24, 2015) ("The Court notes that the regulations at 20 C.F.R. §§ 404.1512, 416.912 were amended on March 20, 2015 with an effective date of April 20, 2015."). Second, the obligation of the claimant to submit evidence of her disability was there before and after the regulation's adoption; it neither expressly nor implicitly relieved the ALJ from the obligation to develop the record. Indeed, while the amendment in question itself expressly rejected an *expansion* of the agency's obligation, it said nothing about *narrowing* the agency's existing obligations. *See* Submission of Evidence in Disability Claims, 80 Fed. Reg. at 14831-32. Third, even if it did, the claimant here *did* submit evidence supporting her claim by filling out the necessary forms and providing details about her medical history. (*See* AR

9

106-16.) Accordingly, this regulation did not reduce the ALJ's burden to develop the record.

### III. "Speculation" About Existence of Other Evidence

The government's last argument is that "mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." (Def's Opp'n. (dkt. #10) 9 (citing *Schoenfeld v. Apfel*, 237 F.3d 788, 798 (7th Cir. 2001).) This, too, is a misapplication of the law: only *after* the Administration has satisfied its burden to develop the record fully can a claimant's argument regarding the absence of evidence be scrutinized by the court. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) ("Once the Secretary establishes that the record was developed fully and fairly, the plaintiff [then] has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap."). In the instant case, the government has failed to meet its initial burden of developing a complete record.

Unlike in *Schoenfeld,* the claimant in this case has identified *several* gaps in the record. (*See* Pl.'s Brief (dkt. #9) 3.) For instance, claimant reported that she had received a head CT from Dr. Eric Maki at Aspirus Grandview Hospital on September 9, 2013. (AR 114.) Although the results of this scan would be highly probative to Clark's claims of concussions and migraines, there is *no* indication that the ALJ attempted to obtain these records. Such failures are especially glaring in light of the ALJ's rejection of her disability claim based in part on a lack of evidence of physical impairment. (*See* AR 21.)

Importantly, claimant reported migraines and vision trouble to the ALJ. (AR 106-16.) In identifying her "Recent Medical Treatment," Clark wrote that she had seen Dr.

Wes Frisbie in Ironwood, Michigan, in August 2014, and Dr. Frisbie had diagnosed her with depression, migraines and the "start of cataracts." (AR 123.) Although claimant provided Dr. Frisbie's phone number, the record again reveals no attempt by the ALJ to obtain medical evidence regarding that diagnosis, and the fact that the ALJ was aware medical records existed and failed to obtain them strongly supports claimant's case for remand. *See Harris v. Barnhart*, 219 F. Supp. 2d 966, 974-75 (E.D. Wis. 2002) (remanding an ALJ's unfavorable decision for failure to develop the record in consideration of plaintiff's reports that he was "depressed" and other evidence in the administrative record).[5]

In addition to failing to obtain evidence from obvious, identified sources, the ALJ failed to develop the record at claimant's hearing. The hearing lasted only twenty-four minutes, indicating that "the ALJ did not take sufficient care" in producing the record. (Pl.'s Reply (dkt. #12) 3; Pl.'s Opening Br. (dkt. #9) 6 (citing *Thompson*, 933 F.2d at 586 (remanding case after only a thirty-two minute hearing); *Lashley v Sec. of Health & Human Serv.*, 708 F.2d 1048, 1052 (6th Cir. 1983); *Harris v. Barnhart*, 219 F. Supp. 2d 966, 974 (E.D. Wis. 2002) ("The Commissioner did not come close to meeting her burden in this case. The hearing was perfunctory, lasting just twenty-three minutes, and the ALJ made no meaningful inquiry into several key areas.")).) Not only was the hearing here extraordinarily short, the ALJ failed to question claimant about the extent of her migraines or visual impairments. (*See* AR 165-80; Pl.'s Opening Br. (dkt. #9) 6.)

Finally, claimant contends that an "overall lack of communication, organization and

---

[5] As further evidence of the ALJ's failure to investigate, claimant also listed her step-sister, Dawn Wilson, as a person with information about her conditions (AR 106), yet it seems the ALJ never contacted her as well.

candor" on the part of ALJ Bedwell and others at the Social Security Administration warrant remand. (Pl.'s Opening Br. (dkt. #9) 6.) She is right. The administrative record itself reflects a lack of care, as well as a lack of development. First, claimant's case was remanded by the Appeals Council on April 15, 2016, because the administrative record was missing, only to reappear, prompting the Appeals Council to vacate that order on August 7, 2017. (AR 3, 9-10.) Second, and continuing with the trend of missing documents, the third page of the ALJ's decision was missing from the record when it was filed with this court. (*See* AR 18-20 (missing AR 19).) Third, as noted previously, the paper record itself is small. All of these facts indicate a lack of care, in addition to the lack of development discussed above

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Roberta Clark's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 29th day of August, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge